IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK HINSHAW,<br><br>    Plaintiff,<br><br>  v.<br><br>THE VESSEL M/V AURORA, and AL BOURAQ AVIATION, INC., a Delaware Corporation,<br><br>    Defendants.<br>_____/ | No. C 05-3927 CW<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION TO DISSOLVE ORDER OF ARREST AND DENYING PLAINTIFF'S MOTIONS |

    Defendants M/V Aurora (the Vessel) and its owner Al Bouraq Aviation, Inc. move for partial summary judgment with respect to the first cause of action of the second amended complaint.  In a separate motion, they move to dissolve the November 29, 2005 Order of Arrest.  Pro se Plaintiff Jack Hinshaw opposes both motions.  He has filed numerous motions in response to Defendants' motions; his motions were not properly noticed, but the Court will address them nonetheless.  The matters were heard on May 31, 2007.  Having considered all of the papers filed by the parties, the evidence

cited therein and oral argument, the Court grants Defendants' motions and denies Plaintiff's motions.

BACKGROUND

Plaintiff initiated this action on September 28, 2005. His first cause of action was "an in rem action brought to enforce a maritime lien"; his remaining claims were against the owner of the Vessel. Pursuant to the Supplemental Admiralty and Maritime Claims Rule C, Plaintiff sought arrest of the Vessel. He further sought to be appointed substitute custodian of the Vessel. On November 29, 2005, the Court granted Plaintiff's application for arrest and denied his application for appointment as substitute custodian. The U.S. Marshal has not yet arrested the Vessel; nonetheless, the Court's order of arrest restricts the movement of the Vessel.

In July, 2006, Plaintiff amended his complaint for the second time, alleging, as he had in his earlier complaints, that he was hired to oversee the refurbishing and re-fitting of the Vessel, but was not paid for that work. His second amended complaint contains four causes of action. Defendants move for summary judgment only on the first. This claim, entitled "Brought by Plaintiff Against All Defendants for Unpaid Wages, Supplies, Penalties and Necessaries, Expenses Advanced, Maintenance, and Cure to Enforce Maritime Lien," is alleged under admiralty law. Plaintiff states that he provided services to the Vessel and that he joined the Vessel as a member of the crew, fully performing his duties as a crew member. He claims that he is entitled to penalty wages under 46 U.S.C. § 10313.

2

At his deposition, however, Plaintiff testified that his Coast Guard seaman papers have not been updated since the early 1950s. He further testified that he had not entered his name in the Vessel's log, that he never went on a voyage on board the Vessel and that he was a crew of one.

Plaintiff admitted that the Vessel was "almost what you call a derelict vessel," Walsh Dec., Ex. 1 at 116:8-9, and that the Vessel's most recent Certificate of Documentation expired in August, 1991. It is not currently documented or numbered under the laws of the United States. The Vessel had not been in operation for "probably ten years or more." Id. at 117:19. At the time Plaintiff was associated with the Vessel, its engines were not operating; it was tied up and it never left the dock.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.

3

1 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
2 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d
3 1551, 1558 (9th Cir. 1991).

4     Material facts which would preclude entry of summary judgment
5 are those which, under applicable substantive law, may affect the
6 outcome of the case.  The substantive law will identify which facts
7 are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
8 (1986).

9     Where the moving party does not bear the burden of proof on an
10 issue at trial, the moving party may discharge its burden of
11 production by either of two methods.  Nissan Fire & Marine Ins.
12 Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir.
13 2000).

> The moving party may produce evidence negating an
> essential element of the nonmoving party's case, or,
> after suitable discovery, the moving party may show that
> the nonmoving party does not have enough evidence of an
> essential element of its claim or defense to carry its
> ultimate burden of persuasion at trial.

Id.

    If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to

4

produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." <u>Bhan</u>, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. <u>Nissan</u>, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. <u>Id.</u>

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. <u>Id.</u> This is true even though the non-moving party bears the ultimate burden of persuasion at trial. <u>Id.</u> at 1107.

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a <u>prima facie</u> showing in support of its position on that issue. <u>UA Local 343 v. Nor-Cal Plumbing, Inc.</u>, 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. <u>Id.</u>; <u>see also</u> <u>Int'l Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1264-65 (5th Cir. 1991). Once it has done so, the non-moving party must set forth specific facts controverting the moving party's <u>prima facie</u> case. <u>UA Local 343</u>, 48 F.3d at 1471. The non-moving party's "burden of contradicting [the moving party's] evidence is not

5

negligible." Id. This standard does not change merely because resolution of the relevant issue is "highly fact specific." Id.

DISCUSSION

I. Defendants' Motion for Summary Judgment

Defendants argue that Plaintiff's first cause of action, which is based on federal admiralty law, fails as a matter of law. They contend that, because the Vessel was a "dead ship" and because Plaintiff did not serve as a seaman, there can be no admiralty claim.

In Robert E. Blake Inc. v. Excel Env't, 104 F.3d 1158 (9th Cir. 1997), the Ninth Circuit explained that, although a contract to repair a ship is generally covered by admiralty law, contracts for services to a vessel "laid up and withdrawn from navigation, i.e., a 'dead ship,'" are not governed by admiralty law. 104 F.3d at 1160. The "health of the ship at the time the contract is formed" is determinative. Id. The court noted that the Second Circuit has held that a ship that had laid idle for several years and was then towed was dead "because her pumps were deactivated, her engine was inoperable, and she lacked proper documentation." Id. (citing Murray v. Schwartz, 175 F.2d 72, 72-3 (2d Cir. 1949)). The court concluded that, at the time the parties formed their contract, the vessel at issue was a dead ship: the ship had been stored for several years and was withdrawn from navigation. Because "contracts for services to dead ships are not within admiralty jurisdiction," the contract in Blake was not subject to admiralty law, even though the contract was to reactivate the dead ship. Id. at 1161.

6

Here, it is undisputed that, at the time any contract was formed, the Vessel had not been operated for over a decade and its certificate of documentation had long since expired. Indeed, Plaintiff does not dispute that the Vessel is derelict. Rather, he accuses Defendants of failing to acknowledge the less stringent rulings of other circuits. Plaintiff's reliance on the Second Circuit cases he cites, however, is misplaced. For example, in Shipping Financial Services Corp. v. Drakos, 140 F.3d 129, 132 (2d Cir. 1998), the court concluded that, although "agency contracts can be a basis for admiralty jurisdiction if the 'nature and subject matter' of the contract is maritime," the particular charter party brokerage contract at issue failed to qualify for admiralty jurisdiction. The Second Circuit cases do not address the issue of a dead ship. Nor was that issue addressed in the Supreme Court case Plaintiff cites, Exxon Corp. v. Central Gulf Lines, Inc., 500 U.S. 603, 611 (1991). Further, cases from the Second Circuit are not binding on this Court; the Ninth Circuit's decision in Blake, however, is binding on this Court. And, as in Blake, at the time any contract between the parties was entered into, the Vessel was "withdrawn from navigation and thus admiralty jurisdiction as well." 104 F.3d at 1160. Because the Vessel is a dead ship, Plaintiff's first cause of action, his admiralty claim, fails.

Defendants argue that Plaintiff's admiralty claim fails for an additional reason. According to Defendants, Plaintiff was not a seaman on the Vessel and, thus, he is not entitled to the duties and protections of federal maritime law and statutes. They note

that the statute to which Plaintiff refers in his first cause of action applies to a Vessel of the United States "on a voyage" and that it is undisputed that Plaintiff never went on a voyage while he was working on the vessel.  46 U.S.C. § 10301(a).  Cf. McKinley v. All Alaskan Seafoods, Inc., 980 F.2d 567 (9th Cir. 1992) (holding that the ship was not in "navigation," within the meaning of the Jones Act, and thus the decedent was not a "seaman" at the time of the accident).

Plaintiff responds that he performed substantial work on the Vessel and that a jury could, based on his experiences, find that he was a seaman.  The evidence he attaches, including proof from the U.S. Coast Guard of his last service as an ordinary seaman in 1950, however, does not show that Plaintiff was a "seaman" with this Vessel; whether he was a seaman on another ship does not establish that he was a seaman here.  Further, Plaintiff provides no evidence that he is currently certified to be a seaman or that he was hired by Defendants as a seaman.  The employment agreement says that his duties were to "rebuild, refit, commission, make seaworthy, obtain certification as a commercial vessel."  Plaintiff's Ex. 1.  Nor does Plaintiff's citation to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, save his claim.  That act provides compensation for injury, disability and death.  Plaintiff makes no such personal injury claim in his Second Amended Complaint.  Plaintiff fails to show that there is a material dispute of fact concerning whether he served as a seaman on the Vessel.

1   For this reason as well, the Court concludes that Plaintiff's
2 admiralty claim fails as a matter of law and grants summary
3 judgment in favor of Defendants.
4 II.  Defendants' Motion to Dissolve Order of Arrest
5   The Court ordered the arrest of the Vessel pursuant to
6 Supplemental Admiralty and Maritime Claims Rule C.  The
7 Supplemental Rules govern the procedure in admiralty and maritime
8 claims with respect to actions in rem.  Supp. Rule A(1)(A)(ii).  As
9 other courts have found, a prerequisite to arrest under Rule C is
10 an admiralty or maritime claim.  See, e.g., Navieros
11 Inter-Americanos, S.A. v. M/V Vasilia Express, 120 F.3d 304, 313
12 (1st Cir. 1997) ("In order to invoke Rule C to arrest a vessel, a
13 plaintiff must have a valid maritime lien against the defendant's
14 vessel.").  Because no admiralty claims remain in this case,
15 Defendants' motion to dissolve the order of arrest is granted.
16 III.  Plaintiff's Motions
17   Plaintiff filed a response to Defendants' motion for summary
18 judgment containing five "supporting motions": Motion for Fraud and
19 Quantum Meruit; Motion to Substitute Dr. Abdullah Alanizi in Lieu
20 of David Tattum as Company Representative; Motion to Reject of
21 [sic] Lien for Fees in its Entirety; Motion to Reopen and
22 Adjudicate Motion to Compel and for Sanctions; and Motion for Cash
23 Bond in Lieu of Restriction of Movement of Aurora.[1]  He then filed
24 a separate motion to reject his prior attorney's lien for fees,

---

[1] Plaintiff's Motion to Shorten Time to Hear his Motions to Counter Defendants' Motion for Partial Summary Judgment (Docket No. 145) is GRANTED IN PART.  The Court did not hear Plaintiff's motion to reject his prior attorney's lien for fees.

*United States District Court*
*For the Northern District of California*

stating in the caption that the motion was part of his response to Defendants' dispositive motion for partial summary judgment, and a separate Motion to Substitute Dr. Abdullah Alanizi in Lieu of David Tattum as Company Representative, which the Court took under submission on the papers. Ten days before the hearing, he filed a "Motion to Accept Plaintiff's Claims," which appears to be a request for judgment in his favor. Then three days before the hearing, he filed a motion for leave to file a third amended complaint. None of these motions was properly noticed pursuant to the Civil Local Rules.

Because Plaintiff's motion to reject his prior attorney's lien for fees (Docket No. 129) is not related to Defendants' motion for summary judgment, the Court will not address it in this order and will take the matter under submission. Plaintiff's former counsel has already submitted a declaration in response to Plaintiff's motion and Plaintiff has filed a reply. The Court will decide the matter in a separate order without further briefing. The Court will, however, address Plaintiff's other motions.

Plaintiff's motion for fraud and quantum meruit is denied. As discussed below, Plaintiff's complaint does not contain a cause of action for fraud and whether Plaintiff conferred something of value on Defendants, which might support a quantum meruit claim, is a question to be decided at the bench trial and cannot be resolved here.

Plaintiff's motion to substitute Dr. Abdullah Alanizi for David Tattum as Company Representative is denied. Plaintiff cites no legal authority for his motion and the Court knows of none.

10

Plaintiff's motion to reopen and adjudicate his motion to compel and for sanctions is denied. Plaintiff states that his prior attorney "failed to incorporate a list of specific documents that were not requested and subjects not covered prepared [sic] for him." Discovery was closed on March 1, 2007, and Plaintiff does not provide good cause to reopen discovery or for sanctions.

Plaintiff's motion for a cash bond in lieu of restriction of movement of Aurora is also denied. Plaintiff fails to show that one is required in this case.

The Court also denies the "Motion to Accept Plaintiff's Claim." In addition to being untimely, the motion is without merit. The Court cannot at this time "accept" Plaintiff's claim for wages, benefits and reimbursements pertaining to the employment agreement or "accept" his claim for a commission for finding someone to buy the Vessel. That is to be decided at the trial.

Finally, the Court denies without prejudice Plaintiff's motion for leave to amend his complaint to add claims for quantum meruit and fraud. As Plaintiff acknowledged at argument, his complaint already contains a cause of action for quantum meruit. A motion for leave to amend a complaint must attach a copy of the proposed complaint. Plaintiff does not. Further, any pleading alleging fraud is governed by Federal Rule of Civil Procedure 9(b), which requires that "the circumstances constituting fraud or mistake shall be stated with particularity." As the Ninth Circuit instructs, "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting

Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).  In addition, the pleading must set forth what is false or misleading about a statement, and why it is false.  Id.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment (Docket No. 118) is GRANTED.  Their motion to dissolve the order of arrest (Docket No. 121) is also GRANTED.  The November 29, 2005 order of arrest is DISSOLVED.  The Court DENIES Plaintiff's Motion for Fraud and Quantum Meruit, Motion to Substitute Dr. Abdullah Alanizi in Lieu of David Tattum as Company Representative (Docket No. 139), Motion to Reopen and Adjudicate Motion to Compel and for Sanctions, Motion for Cash Bond in Lieu of Restriction of Movement of Aurora and Motion to Accept Plaintiff's Claims (Docket No. 146).  Plaintiff's motion for leave to amend his complaint (Docket Nos. 158, 159) is DENIED WITHOUT PREJUDICE.  If Plaintiff wishes to seek leave to amend his complaint to add a claim of fraud, he must do so within ten days of the date of this order, and the motion must be noticed in accordance with Civil Local Rule 7-2 and be accompanied by the proposed amended complaint.  Plaintiff's motion to reject his former attorney's lien (Docket No. 129) is submitted on the papers and the Court will address it in a separate order.

IT IS SO ORDERED.

Dated: 6/6/07

_____
CLAUDIA WILKEN
United States District Judge